UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-23382-Civ-COOKE/TORRES

ESTHER SERRANO,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

**ORDER GRANTING *DAUBERT* MOTION**

Plaintiff Esther Serrano ("Plaintiff" or "Serrano") brings this action against Defendant American Airlines, Inc. ("Defendant" or "American") for injuries she allegedly suffered after falling from a mobile stairway while disembarking from an American flight. Defendant filed a *Daubert* Motion (ECF No. 47) to exclude the testimony of Plaintiff's expert. For the reasons below, Defendant's *Daubert* Motion is granted.

### I.  BACKGROUND

Serrano was a fare-paying passenger on an American flight traveling from Miami, Florida to Paris, France on October 2, 2013. The flight arrived at Charles de Gaulle Airport the next morning, where Serrano and her fellow passengers were directed to exit the plane via a mobile stairway. American's ground handling agent, Alyzia Airport Services ("Alyzia"), operated and secured the stairway. Serrano allegedly fell and suffered injuries while descending from the mobile stairway. Parties disagree about whether Serrano's fall was an accident as required under the Convention for the Unification of Certain Rules Relating to International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 350 ("Montreal Convention"),[1] or the result of her own error.

---

[1] The Supreme Court has defined accident under the Montreal Convention as "an unexpected or unusual event or happening that is external to the passenger," which is "flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Air France v. Saks*, 470 U.S. 392, 405 (1985) (referring to the Montreal Convention's predecessor, the Warsaw Convention).

1

To support her claims, Serrano wishes to submit expert testimony from forensic engineer Paul M. Getty ("Getty"). Getty believes Serrano fell on at least one partially lifted, lower stairway step during her descent and criticizes the recordkeeping surrounding Serrano's accident.

## II.    LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It states the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A district court has the responsibility of acting as a gatekeeper to exclude unreliable expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). This gatekeeping function applies to "all expert testimony," whether based on "scientific knowledge" or "based on technical and other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In performing this function, the district court's role is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In order to determine the admissibility of expert testimony, a district court must consider three issues: (1) whether the expert is qualified to testify competently about the subject matter he intends to address, (2) whether the expert's methodology is sufficiently reliable, and (3) whether the testimony assists the trier of fact to understand the evidence through the application of the witness's expertise. *Quiet Tech. DC-8*, 326 F.3d at 1340 – 41. The party seeking to introduce expert testimony must satisfy these criteria by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

As for reliability, a purported expert opinion must meet three factors: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Cincinnati Ins. Co. v. Cochran*, No. CIV.A. 99-0552-WS-C, 2005 WL 2179799, at *2 (S.D. Ala. Sept. 2, 2005) (internal quotation marks omitted). "For nonscientific expert testimony, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. . . . A district court may decide that nonscientific expert testimony is reliable based upon personal knowledge or experience." *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (internal quotation marks omitted). "In the context of an expert witness testifying on the basis of specialized experience, a reliable methodology means that the witness must explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts [of the case]." *Lopez v. Allstate Fire & Cas. Ins. Co.*, No. 14-20654-Civ-MGC, 2015 WL 5584898, at *6 (S.D. Fla. S.D. Fla. Sept. 23, 2015) (alterations in original) (internal quotation marks omitted).

### III.   DISCUSSION

While Getty's engineering credentials are unquestioned, his opinions are either unreliable or unhelpful for a jury. Thus, all of his opinions are inadmissible.

Based on his review of certain record evidence, Getty proffers opinions on the cause of Serrano's fall and the recordkeeping therein. *See generally* ECF Nos. 38-1, 47-4. He surmises that the possible stairway model used during Serrano's fall was either a TLD ABS 580 or a Sovam SPS 9.19 model. Getty concludes that Serrano fell on, and was injured by, at least one partially lifted, lower stairway step. In particular, Getty asserts Serrano placed her foot and bodyweight on at least one elevated lower step, causing both the lower step to return to an even-leveled position and Serrano to lose her balance and fall. Getty believes a step could have been partially lifted because of a mechanical defect, or because someone unlatched a safety barrier on the lower step by nicking their heel or luggage on it during disembarkment. Further, Getty opines that American and Alyzia's lack of records specifying the stairway model used on Serrano's flight contravenes airline industry standards for recordkeeping, which demands airline records contain manufacturer names, models, serial numbers, and other pertinent stairway information for each flight.

First, Getty's opinions on Serrano's fall are inadmissible. His observation about the two possible stairway models is undisputed, and, thus, would not assist the jury. *See Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit,* 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."). In addition, though Getty asserts he used the scientific method and deductive reasoning in general to analyze Serrano's fall, he did not perform any testing or consult relevant publications to reach his conclusions.[2] Instead, he used his engineering knowledge and mobile stairway experiences[3] to offer three possible reasons for a lifted step, which illustrates how speculative his opinion is. *Cf. Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1365 (S.D. Fla. 2009) (finding inadmissible expert testimony from a witness who did not perform any aircraft engine tests and offered several possible causes for aircraft engine failure). Getty's analysis also underplays contradictory evidence on the record. For one, he relies on some of Serrano's representations about her fall and discounts the French gate agent present during Serrano's disembarkment, who testified that she did not witness a step malfunction or collapse at the time of Serrano's fall. *See generally* ECF No. 53-1. He also sidesteps portions of Serrano's deposition that recount how Serrano fell on at least one step with protruding pieces, and not a lifted step as Getty propounds. *See* ECF Nos. 47-7, 47-8. Taken together, I do not find Getty's opinions on Serrano's fall pass *Daubert*'s reliability analysis.

Getty's thoughts on American's recordkeeping are also unreliable. He admits in his deposition that there is no evidentiary basis to support his notion that a detailed record of the stairway used during Serrano's fall existed, and that he could not identify any formal industry standards regarding stairway recordkeeping. *See* ECF No. 47-4 at 119 – 121. Though he purportedly relies on personal knowledge when asserting his views on the need for detailed

---

[2] Serrano blames American's lack of stairway records for why Getty could not conduct any tests on the model stairway in question. But nothing foreclosed Getty from testing a similar TLD ABS 580 or Sovam SPS 9.19 model stairway. Serrano also belatedly attached to her response a Flight Safety Foundation publication to show the principles Getty relied on to form his opinions. *See* ECF No. 48-4. But Serrano fails to explain how or why the publication was used, and Getty does not reference it in his expert report or deposition. As such, I do not consider this publication in my analysis.

[3] To be sure, a court may find an expert's experience and knowledge alone sufficiently reliable in certain contexts. But with his inadequate methods and minimization of conflicting evidence, Getty's testimony does not pass the *Daubert* analysis.

stairway information, Getty could not recall a time where an airline in his experience kept serial number information for each mobile stairway used for each flight. *See id.* at 142; *see also Kaufman v. Pfizer Pharms., Inc.*, No. 1:02-CV-22692, 2011 WL 7659333, at *7 (S.D. Fla. Aug. 4, 2011) (stating that a purported expert "must explain *how* [his] experiences led to the conclusions [he] reached, *why* [his] experiences are sufficient bases for [his] opinions, and how [his] experiences are *reliably applied* to the facts of the case"). Getty ultimately cites to the deposition of Alyzia's ramp operation director, Bruno Meyer ("Meyer"), who raised possible recordkeeping regulations germane to mobile stairways. *See, e.g.*, ECF 47-4 at 126; *see also* ECF No. 54-1. But Getty has no independent experience or knowledge on the topic. His mere adoption of Meyer's testimony on this matter is duplicative and would not further assist the jury. *See Hibiscus Assocs.,* 50 F.3d at 917; *Eberli*, 615 F. Supp. 2d at 1365.[4]

## IV.   CONCLUSION

For the reasons above, Defendant's *Daubert* Motion to Exclude the Opinions and Testimony of Plaintiff's Purported Expert Paul M. Getty (ECF No. 47) is **GRANTED**. Getty's expert testimony is excluded in its entirety.

**DONE and ORDERED** in chambers at Miami, Florida, this 8th day of November 2016.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*

---

[4] While I will not entertain discovery disputes at this point of the litigation, the admissibility of portions of Meyer's deposition and other evidence related to recordkeeping fall beyond the scope of this *Daubert* motion. For now, my ruling on recordkeeping only affects Getty's opinions on the topic.